U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SEP 11 2012

**FILED**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA )
                      )
      v.            •    )
                      )     **11-cr-131-01-JD**
Rudolfo Ariel Amparo Aybar   )
                      )
     a/k/a Jose Robles      )

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, John P. Kacavas, the United States Attorney for the District of

New Hampshire, and the defendant, Rudolfo Ariel Amparo Aybar, and the defendant's attorney,

Paul J. Garrity, Esq., enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant agrees to plead guilty to counts 1, 3, 4, 5, 6, and 7 of the Indictment

charging him with Aiding and Abetting False Statement During a Firearms Purchase, in violation

of Title 18, United States Code, Section 922(a)(6) (Counts 1 and 3); False Statement to an

Agency of the United States, in violation of Title 18, United States Code, Section 1001 (Count

4); False Presentation of a Social Security Number, in violation of Title 42, United States Code,

Section 408(a)(7)(B) (Count 5); False Claim of U.S. Citizenship, in violation of Title 18, United

States Code, Section 911 (Count 6); and Aggravated Identity Theft, in violation of Title 18,

United States Code, Section 1028(A) (Count 7).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in section 6 of this agreement and also agrees to dismiss Counts 2, 8 and 9

at the time of sentencing.

2. **The Statute and Elements of the Offenses**.

**Counts 1 and 3**: **Aiding and Abetting False Statement During a Firearms Purchase.**

Title 18, United States Code, Section 922(a)(6) provides, in pertinent part, as follows:

§ 922(a)(6). Unlawful acts–

> It shall be unlawful for any person in connection with the acquisition
> or attempted acquisition of any firearm or ammunition from a . . . licensed
> dealer . . . knowingly to make any false or fictitious oral or written statement . . .
> intended or likely to deceive such . . . dealer . . . with respect to any fact
> material to the lawfulness of the sale or other disposition of such firearm or
> ammunition under the provisions of this chapter.

18 U.S.C. § 922(a)(6) (West 2012).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

**First**, that the firearms dealer in question was federally licensed;

**Second**, in connection with acquiring or attempting to acquire each of the firearms listed

in the Indictment, the defendant aided and abetted the false statements;[1]

**Third**, the defendant knew the statements were false; and

**Fourth**, the false statements were material; that is, each false statement had a natural

tendency to influence, or was capable of influencing the licensed firearm dealer into

believing that the firearms listed in the Indictment could be lawfully sold to the

buyer.

---

[1]To "aid and abet" means intentionally to help someone else commit a crime. To establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged offense; and

Second, the defendant consciously shared the other person's knowledge of making a false statement during a firearms purchase, intended to help the principal, and took part in the endeavor, seeking to make it succeed. Hornby, Pattern Criminal Jury Instructions for the District Courts of the First Circuit, 2012 Revisions, 79-81.

Hornby, Pattern Criminal Jury Instructions for the District Courts of the First Circuit, 2012

Revisions, 123-24.

**Count 4**:  **False Statement to an Agency of the United States.**

> Title 18, United States Code, Section 1001 provides, in pertinent part, as follows:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative or judicial branch of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title (and) imprisoned . . . .

18 U.S.C. § 1001 (West 2012).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

**First** : The defendant made a materially false, fictitious, or fraudulent statement or

representation to an agent of a department or agency of the United States;

**Second** : The statement regarded a matter within the jurisdiction of such department or

agency;

**Third:** The defendant made such material false statement knowingly and willfully.

Devitt & Blackmar, § 28.06.

**Count 5**: **False Representation of Social Security Number.**

Title 42, United States Code, Section 408(a)(7)(B) provides, in pertinent part, as follows:

> Whoever . . . with the intent to deceive, falsely represents a number to be the social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the social security number assigned by the  Commissioner of Social Security to him or to such other person . . . shall be guilty of a felony . . . .

42 U.S.C. § 408(a)(7)(B) (West 2012).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

**First:** that the defendant willfully and knowingly represented to someone, for any purpose, that the social security number described in the Indictment had been assigned to him by the Commissioner of Social Security;

**Second:** that the social security number, in fact, had not been assigned to the defendant; and

**Third:** that the defendant made such representation with the intent to deceive.

Hornby, Pattern Jury Instructions for the District Courts of the First Circuit, 2012 Revisions, 243.

**Count 6: False Claim of U.S. Citizenship.**

Title 18, United States Code, Section 911 provides, in pertinent part, as follows:

> Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned . . . .

18 U.S.C. § 911 (West 2012).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

**First:** that the defendant falsely represented himself to be a citizen of the United States;

**Second:** that the defendant was not a citizen of the United States at the time; and

**Third:** that the defendant made such false representation willfully, that is, the misrepresentation was voluntarily and deliberately made.

United States v. Ramirez, 495 F. Supp. 2d 92, 118 (D. Me. 2007).

**Count 7:  Aggravated Identity Theft.**

4

Title 18, United States Code, Section 1028A provides, in pertinent part, as follows:

> [w]hoever, during and in relation to any . . . violation [of 18 U.S.C. 1001 or 42 U.S.C. §408 as set forth at counts four and five of the indictment], knowingly . . . possesses or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for [a violation of 18 U.S.C. 1001 or 42 U.S.C. §408], be sentenced to a term of imprisonment . . . .

18 U.S.C. § 1028A(a)(1) (West 2012).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

**First**, that the defendant committed the crimes of Providing False Information to an Agency of the United States or False Representation of a Social Security Number;

**Second**, that during and in relation to those crimes, the defendant knowingly possessed or used a means of identification, the name and social security number described in the information, without lawful authority;

**Third**, that the name or social security number belonged to another actual person; and

**Fourth**, that the defendant knew that the name or social security number belonged to another person.

Hornby, Pattern Criminal Jury Instructions for the District Courts of the First Circuit, 2012 Revisions, 144.

3. **Offense Conduct**.

The defendant stipulates and agrees that if this case proceeded to trial, the government would establish the following facts and those facts would prove the essential elements of the offense beyond a reasonable doubt:

**Counts 1 and 3:**

On Saturday, October 2, 2010, the State Line Gun Shop, a federally licensed firearms dealer located in Plaistow, NH was visited by three individuals - two Hispanic males and a Caucasian female. The conduct of the males immediately attracted the attention of the clerk due to their interest in buying a fully automatic weapon. When advised that the shop could not sell automatic weapons, the men turned their attention to a Glock 18 pistol, asking if it could be made to be automatic. When told that it could not be done, the men turned their attention to a Glock 17 pistol.

During this time, the female spoke to the males in Spanish. The men pointed to the Glock 17 in the display case and one of the men stated, "That's the one I want." The weapons is identified as a Glock, model 17 handgun, bearing serial number PCX860. While the female completed the Form 4473, one of the men provided cash to pay for the gun. The female completing the Form 4473 identified herself via a NH driver's license as Beth M. Kennedy, of Nashua. The clerk noticed that Kennedy was nervous and shaking while completing the form and spoke in a "chalky" dry mouth when conversing with him. When completing the Form 4473, she indicated in response to question 1 of the form that she was the actual buyer of the weapon.

Given the suspicious circumstances, the clerk delayed the sale and took Kennedy's phone number to call her back once the sale was approved. As the three left the store, one of the men said something to Kennedy in Spanish and once outside, the clerk watched as Kennedy handed the cash back to the men.

The FFL notified a Bureau of Alcohol, Tobacco and Firearms agent of the suspicious transaction and the agent, posing as the store clerk, made contact with Kennedy. After several

6

calls in which she was advised the transaction had been approved, Kennedy made arrangements to go back to the shop and conclude the sale for the gun.

On October 14, 2010, as surveillance teams observed the store, Kennedy arrived driving her own vehicle. Surveillance also observed a green Toyota Camry with Massachusetts registration simultaneously enter the gun shop from a different entrance, quickly conduct a three point turn, and drive to the parking lot of another business across the street from the gun store. The driver of the vehicle, observed to be a Hispanic male, parked in a manner that allowed a clear view of the gun shop and surveillance observed the driver staring intently at the store.

Meanwhile, inside the gun store, the transaction for the Glock 17 was concluded and the ATF agent observed Kennedy take possession of the weapon. Kennedy was allowed to leave the premises and was arrested outside with the gun in her possession. As Kennedy was being arrested, the suspect vehicle operated by the Hispanic male parked across the street, quickly backed up and attempted to depart the area. The vehicle was blocked by agents and the occupants were arrested. The driver identified himself as Jose Robles, and a female passenger, who stated she was Robles' girlfriend, was also identified.

Subsequent to her arrest, Kennedy was interviewed and admitted that she was addicted to heroin and that "Rudy" was her dealer. She indicated that she was purchasing the firearm for "Rudy." She stated that on October 14, she went to "Rudy's" residence in Lawrence before traveling to the gun store and that she received the money ($550) from "Rudy" for the purchase. Kennedy identified the male watching the gun store as "Rudy."

Kennedy also admitted to previously buying a handgun for "Rudy" in 2009. She indicated that "Rudy" called her and asked her to buy the gun, stating that he planned to send it to his

7

father in Puerto Rico. Kennedy said that she and "Rudy" and a female friend of his went to Pete's Guns in Hudson and that the female did the interpreting. She stated that about one week later, after "Rudy" gave her money to buy the gun, she returned to the store and completed the transaction for the gun and some ammunition. She stated that both the gun and the ammunition were delivered to "Rudy" in exchange for heroin at the McDonald's Restaurant in Hudson, down the street from the gun store.

A Form 4473 obtained from Pete's Guns, a federally licensed firearms dealer, verified that Kennedy had purchased an HS Products, model XD40 handgun, bearing serial number US196571 from Pete's Guns on March 28, 2009.

The weapon subsequently identified as that purchased by Kennedy from Pete's Guns was later recovered by law enforcement. The weapon was recovered during a June 2009 raid on a residence at 19 Oregon Avenue in Lawrence where agents had gone to execute an arrest warrant. Upon their arrival at the home, several individuals who were present within scattered throughout the house. The defendant, identifying himself as Jose Robles, was found to be present in the residence at the time of the incursion by police. A search pursuant to the consent of a female resident turned up thirty-nine .40 caliber bullets and the HS Products, model XD40 handgun, bearing serial number US196571, which had been purchased by Kennedy.

A cell phone taken from Kennedy shows several contacts between her and a number attributed to Robles during the period of the attempt to acquire the Glock 17 handgun in October 2010.

**Counts 4 - 7:**

8

On May 13, 2008, a person claiming to be Jose Ruben Robles, d/o/b **/**/1986, SSN: ***-**-9423 of Puerto Rico, submitted a passport application at the Lawrence, MA Post Office. The subject used a Mass driver's license and a Puerto Rican birth certificate as proof of citizenship. (The Massachusetts driver's license bore the photograph of the defendant, now correctly identified as Rudolfo Ariel Amparo Aybar). Due to several fraud indicators such as recently issued birth certificate and ID, labored signature, omission of parental dates of birth and others, the application was forwarded to Fraud Prevention. In May, 2008, Fraud Prevention requested additional proof of identity from the applicant. On July 17, 2008, the applicant submitted additional suspect documents, including a school transcript and diploma purported to be from Puerto Rico, which were dated subsequent to his passport application.

On July 25, 2008, a letter was sent to the applicant requesting older or original documents but he responded by supplying the same documents. Thereafter, from October 2008 to January 2009, the applicant called the National Passport Information Center inquiring about the status of his passport. Another request was made for him to submit further documentation, but he again submitted the same insufficient documents. The passport matter was investigated by Diplomatic Security Service (DSS) from February 2009 to May 2009; however, they closed the matter after being unable to locate the applicant.

While the passport investigation was ongoing, in March 2009, "Robles" was actively selling heroin and recruited one of his customers, Beth Kennedy, to obtain a firearm for him, which she was able to do.[2] In October 2010, "Robles" again approached Kennedy and convinced her to buy another gun for him. This scheme resulted in his arrest on October 14, in

---

[2] Kennedy knew her drug source as "Rudy."

Plaistow, NH by ATF, at which time he falsely identified himself to ATF agents as Jose Robles, using the above-described identifiers and claiming that he was of Puerto Rican descent, and thus, a citizen of the United States.

In September 2011, the Bureau of Immigration Customs Enforcement (ICE) joined with DSS to determine the true identity of "Robles". In reviewing the booking information from "Robles" Plaistow arrest in 2010, investigators noted that "Robles" listed the name, DOB and SSN as it had been listed on the passport application, but that he also listed different names for his parents.

On October 6, 2011, ATF arrested the defendant in Andover, MA on the federal arrest warrant during which he again used the "Robles" identity. He also repeated the same identification information to an ATF agent and the U.S. Marshal during his intake in NH. The following day, ICE obtained discarded documents seized during the search of an address associated with the defendant, 800 Bullfinch Road, Andover, MA. One of these documents showed a money wire transfer from "Ariel Amparo" to "Altagracia Aybar," while another showed a transfer from Amparo to Felix Rafael Batista. A third document showed a transfer from "Jose Robles" to the same Felix Rafael Batista.

Within days of receiving this information, ICE received a Dominican 'cedula', which is a national ID card issued in the Dominican Republic. The 'cedula' was issued to "Rodolfo Ariel Amparo Aybar", d/o/b **/**/1984, of Santo Domingo. The 'cedula' photograph strongly resembles a younger version of the defendant. The 'cedula' further identifies Aybar's mother as Altagracia Aybar Kelly and his father as Felix Santiago Batista.

10

After receiving the 'cedula', ICE received the Puerto Rico DMV application for Jose Robles. That record is in the name of Jose R. Robles Rosario, d/o/b **/**/1986, SSN *** - ** - 9423. The person depicted in the photograph attached to the application is clearly not the defendant.

ICE continued their investigation by interviewing Jose Rueben Robles Rosario in Guaynabo, PR. He provided his birth certificate, two photo ID's and his background information to the agents. He also showed agents a tattoo of the Virgin Mary on his lower left leg and a tattoo of a cross, sun and rose on his right arm. He clearly identified his true DOB and SSN which were the same identifiers used by the defendant, Rudolfo Ariel Amparo Aybar, at the time of his arrest in Plaistow on October 14, 2010 and again during his first appearance in U.S. District Court.[3]

ICE also interviewed Maritza Rosario Hernandez in Guaynabo, PR. She positively identified herself and stated she is the mother of Jose Rueben Robles Rosario. On being shown a photograph of the defendant, she indicated that it was not her son. She informed the agents that she has two sons and that they live with her in Puerto Rico. She added that her son, Jose Rueben Robles Rosario, has the tattoo of the Virgin on his leg and the tattoo of a cross and rose on his arm/shoulder.

---

[3] The records of the United States Marshal and U.S. Probation indicate that the defendant used the 'Robles' identity in connection with his first appearance and bail hearing. The defendant signed forms connected with is first appearance using an X. Nevertheless, he also steadfastly asserted during his detention hearing that he was Jose Robles, despite the government's argument to the contrary. Moreover, he also provided the same Puerto Rican school records previously provided to the Passport Center, to the U.S. Probation as evidence that he was Robles. He also cited to these records to the US Magistrate in support of his argument for release.

11

Finally, on December 5, 2011, agents interviewed Felix Batista-Aybar.  He identified his mother as Altagracia Aybar and his father as Felix Santiago Batista.  On being shown a photo of the defendant, he identified him as his brother, Ariel Amparo Batista Aybar.

Finally, the evidence would establish that the records of the Social Security Administration indicate that social security number *** - ** - 9423 is assigned to Jose Rueben Robles Rosario and not to the defendant.

### 4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties for the offense are:

A.      Counts 1 and 3:  A maximum prison term of 10 years on each;

        Count 4 and 5:  A maximum prison term of 5 years on each;

        Count 6: A maximum prison term of 3 years; and

        Count 7: A minimum mandatory term of 2 years, consecutive to any other term of imprisonment.  (18 U.S.C. § 1028A (b)(2)).

B.      Counts 1, 3, 4, 5 and 6:  A maximum fine of $250,000 on each (18 U.S.C. § 3571 (b)(3).

C.      A term of supervised release of not more than 3 years.  The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of $600 ($100 for each count of conviction), at or before the time of sentencing; and that the Court

12

may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

    5. **Sentencing and Application of the Sentencing Guidelines.**

    The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated, except as expressly provided in this Plea Agreement.

    The defendant also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

    The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

    The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. **Sentencing Stipulations and Agreements**.

Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the government and the defendant agree to the

following:

> A. **Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree that a sentence of**
>
> **48 months imprisonment is the appropriate disposition of this case.**
>
> B. The terms of any period of supervised release or probation should include the
>
> following condition:
>
> > If defendant is not a United States citizen or national, either before or immediately
> > following sentencing, defendant shall agree to an order of removal from the United
> > States entered by Executive Office for Immigration Review or authorized
> > Department of Homeland Security official.  Defendant understands that defendant
> > will not be removed until defendant has served any criminal sentence imposed in
> > this or any other case.  Defendant further waives any right to appeal, reopen or
> > challenge the removal order, in this or any subsequent case, administrative, civil or
> > criminal.

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P.

11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the

plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the

defendant will be allowed the opportunity to withdraw his guilty pleas.

The United States and the defendant are free to make recommendations with respect to the

terms of imprisonment, fines, conditions of probation or supervised release, and any other

penalties, requirements, and conditions of sentencing as each party may deem lawful and

appropriate, unless such recommendations are inconsistent with the terms of this Plea

Agreement.

7. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.    Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.    Challenges the United States' offer of proof at any time after the plea is entered;

C.    Denies involvement in the offense;

D.    Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.    Fails to give complete and accurate information about his financial status to the Probation Office;

F.    Obstructs or attempts to obstruct justice, prior to sentencing;

G.    Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.    Fails to appear in court as required;

I.    After signing this Plea Agreement, engages in additional criminal conduct; or

J.    Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

15

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

## 8. **Waiver of Trial Rights and Consequences of Plea.**

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A.   To plead not guilty or to maintain that plea if it has already been made;

B.   To be tried by a jury and, at that trial, to the assistance of counsel;

C.   To confront and cross-examine witnesses;

D.   Not to be compelled to provide testimony that may incriminate him; and

E.   To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the

16

presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement.**

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences.**

17

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant recognizes that pleading guilty may have consequences with respect to immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes constitute removable offenses, including the offenses to which the defendant is pleading guilty. Indeed, the crimes to which the defendant is pleading guilty are crimes for which removal is presumptively mandatory. Removal and other immigration consequences would, however, be the subject of separate proceedings, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's guilty pleas on the defendant's immigration status. The defendant nevertheless affirms that the defendant desires to plead guilty regardless of any immigration consequences, even if the consequence is the defendant's automatic removal from the United States.

12. **Satisfaction of Federal Criminal Liability; Breach.**

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. **Waivers.**

18

**Appeal**.

The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal.  By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

1.  His guilty plea and any other aspect of his conviction, including, but not
    limited to, adverse rulings on pretrial suppression motion(s) or any other
    adverse disposition of pretrial motions or issues; and

2.  The sentence imposed by the Court if that sentence is the stipulated sentence
    or within the stipulated sentencing range specified in section 6 of this
    agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in

the negotiation of this Plea Agreement or at the sentencing hearing.

### B. **Collateral Review**

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

### C. **Freedom of Information and Privacy Acts**

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. **Appeal by the Government**.

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government to pursue an appeal that is authorized by law.

14. **Forfeiture of Assets**.

Pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461 (c), defendant agrees to forfeit to the United States immediately and voluntarily any firearm and ammunition involved or used in the commission of the offenses, including, but not limited to: the firearms described in Counts 1 and 3 and any ammunition seized with them.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant to any criminal, civil and/or administrative forfeiture action brought to forfeit these properties. None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a)

regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not. The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case. The defendant represents that he is the sole owner of the above-listed assets at Counts 1 and 3.

The defendant acknowledges that all property to be forfeited under this section is subject to forfeiture as either proceeds of illegal conduct or property facilitating illegal conduct.

15. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by

22

the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.    **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Date: _9/11/12_

JOHN P. KACAVAS
United States Attorney
By: _____
Robert J. Veiga
Assistant U.S. Attorney
53 Pleasant St.,4th Floor
Concord, NH 03301
(603) 225-1552

I _____, have translated this 23 page Plea Agreement from English to Spanish for the defendant, Rudolfo Ariel Amparo Aybar and I hereby certify that I have translated it faithfully and accurately to the best of my knowledge, skill and ability, as I am competent to render such translation.

_Edwin Mosquera Jr_  Date: _9/5 + 9/6/12_
[Name of Interpreter]

The defendant, Rudolfo Ariel Amparo Aybar, certifies that he has read this 23 -page Plea Agreement and that he fully understands and accepts its terms.

Date: _9/11/12_

_Rodolfo Amparo_
Rudolfo Ariel Amparo Aybar, Defendant

I have read and explained this 23-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _9/11/12_

_____
Paul J. Garrity, Esq.
Attorney for Rudolfo Ariel Amparo Aybar